IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 23-30181

---

CAMERON PARISH RECREATION #6,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; GENERAL SECURITY INDEMNITY
COMPANY OF ARIZONA; UNITED SPECIALTY INSURANCE
COMPANY; LEXINGTON INSURANCE COMPANY; SAFETY
SPECIALTY INSURANCE COMPANY; OLD REPUBLIC UNION
INSURANCE COMPANY,

Defendants—Appellants

*consolidated with*

---

No. 23-30182

---

POLICE JURY OF CAMERON PARISH,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; STEADFAST INSURANCE COMPANY;
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA;
UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON

INSURANCE COMPANY; SAFETY SPECIALTY INSURANCE
COMPANY; OLD REPUBLIC UNION INSURANCE COMPANY,

Defendants—Appellants

*consolidated with*

---

No. 23-30183

---

SCHOOL BOARD OF CAMERON PARISH,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; STEADFAST INSURANCE COMPANY;
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA;
UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; SAFETY SPECIALTY INSURANCE
COMPANY; OLD REPUBLIC UNION INSURANCE COMPANY,

Defendants—Appellants

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA, LAKE CHARLES DIVISION
NOS. 2:22-CV-5287, 2:22-CV-5348, 2:22-CV-5283

---

**APPELLANTS' BRIEF**

---

Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Fax)
wright@wrightclosebarger.com
melkonian@wrightclosebarger.com
boettcher@wrightclosebarger.com
francois@wrightclosebarger.com

***Attorneys for Defendants—
Appellants***

# CERTIFICATE OF INTERESTED PERSONS

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 23-30181

---

CAMERON PARISH RECREATION #6,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; GENERAL SECURITY INDEMNITY
COMPANY OF ARIZONA; UNITED SPECIALTY INSURANCE
COMPANY; LEXINGTON INSURANCE COMPANY; SAFETY
SPECIALTY INSURANCE COMPANY; OLD REPUBLIC UNION
INSURANCE COMPANY,

Defendants—Appellants

*consolidated with*

---

No. 23-30182

---

POLICE JURY OF CAMERON PARISH,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; STEADFAST INSURANCE COMPANY;

iv

GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; SAFETY SPECIALTY INSURANCE COMPANY; OLD REPUBLIC UNION INSURANCE COMPANY,

Defendants—Appellants

*consolidated with*

---

No. 23-30183

---

SCHOOL BOARD OF CAMERON PARISH,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; STEADFAST INSURANCE COMPANY; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; SAFETY SPECIALTY INSURANCE COMPANY; OLD REPUBLIC UNION INSURANCE COMPANY,

Defendants—Appellants

---

The undersigned counsel of record certifies that the following listed persons and entities as described in Fifth Circuit Rule 27.4 and the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## Counsel for Defendants—Appellants

Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP

Sean P. Mount
Bryce M. Addison
Talbot M. Quinn
DEUTSCH KERRIGAN, LLP

## Defendants—Appellants

**Indian Harbor Insurance Company.** Indian Harbor Insurance Company is a wholly-owned subsidiary of XL Specialty Insurance Company and a wholly-owned indirect subsidiary of XL Group Ltd.

**QBE Specialty Insurance Company.** QBE Specialty Insurance Company is a wholly-owned subsidiary of QBE Holdings, Inc. and a wholly-owned indirect subsidiary of QBE Insurance Group Limited.

**Steadfast Insurance Company.** Steadfast Insurance Company is a wholly-owned subsidiary of Zurich American Insurance Company and a wholly-owned indirect subsidiary of Zurich Insurance Group Ltd.

**General Security Indemnity Company of Arizona.** General Security Indemnity Company of Arizona is a wholly-owned subsidiary of SCOR Reinsurance Company, Inc.

**United Specialty Insurance Company.** United Specialty Insurance Company is a wholly-owned subsidiary of State National Insurance Company, Inc.

**Lexington Insurance Company.** Lexington Insurance Company is a wholly-owned subsidiary of AIG Property Casualty U.S., Inc. and a wholly-owned indirect subsidiary of American International Group, Inc.

**Safety Specialty Insurance Company.** Safety Specialty Insurance Company is a wholly-owned subsidiary of Safety National Casualty Corporation and a wholly-owned indirect subsidiary of Tokio Marine Holdings, Inc.

**Old Republic Union Insurance Company.** Old Republic Union Insurance Company is a wholly-owned subsidiary of Old Republic International Corporation.

## Counsel for Plaintiffs—Appellees

Thomas M. Flanagan
Camille E. Gauthier
FLANAGAN PARTNERS LLP

Chad E. Mudd
Wesley A. Romero
David P. Bruchhaus
Matthew P. Keating
M. Keith Prudhomme
Jamie G. Gary
Lenzi C. Hebert
MUDD, BRUCHHAUS & KEATING, LLC

## Plaintiffs—Appellees

**School Board of Cameron Parish**

**Cameron Parish Recreation #6**

**Police Jury of Cameron Parish**

/s/ *Thomas C. Wright*
Thomas C. Wright
***Attorney for Defendants—Appellants***

## STATEMENT REGARDING ORAL ARGUMENT

The Court should grant oral argument in this case. This case presents novel legal issues involving the Federal Arbitration Act, the Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958, and Louisiana law, and the Court would benefit from the opportunity to engage the parties on these issues.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ...................................................................xii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES.................................................................2

STATEMENT REGARDING CONSOLIDATION OF APPEALS ...............................................................................................4

INTRODUCTION.......................................................................................6

STATEMENT OF THE CASE .................................................................8

    I.    Factual Background ..............................................................8

    II.   Procedural History .............................................................10

SUMMARY OF THE ARGUMENT ......................................................14

ARGUMENT ...........................................................................................18

    I.    Standard of review. ............................................................18

    II.   This Court has jurisdiction to review the district court's discovery order. ......................................................18

        A.    Title 9 U.S.C. § 16(a) permits interlocutory appeals of orders favoring litigation over arbitration. ..................................................................19

        B.    The district court effectively denied the Domestic Insurers' motion to compel arbitration and stay the proceedings, making its order appealable under 9 U.S.C. §§ 16(a)(1)(A), (B), and (C)...............................................20

        C.    Federal appellate case law further shows that the district court's order is immediately appealable under 9 U.S.C. § 16(a)(1). ..........................24

D. The needlessness of the ordered discovery underscores that the district court's discovery order was a denial of a motion to compel arbitration and a refusal to stay proceedings................................................................ 29

III. The Convention requires the district court to enforce the Policy's arbitration provision. ........................... 30

A. The Policy's arbitration provision meets all the requirements for enforcement under the Convention, including the requirement that a party to the arbitration provision is not an American citizen. ......................................................... 31

B. Even if the Insurers' contracts were considered to be only separate, equitable estoppel would still mandate arbitration under the Convention. ................................................. 40

IV. The FAA requires the district court to enforce the Policy's arbitration provision. .............................................. 45

A. The FAA mandates that the arbitration provision in the Policy is valid and enforceable. .................................................... 45

B. Louisiana Revised Statutes § 22:868 does not "reverse-preempt" the FAA under the McCarran-Ferguson Act. ............................................ 49

1. The Policy's arbitration provision is a "forum or venue selection clause."...................... 50

2. The Policy is not subject to approval by the Louisiana Department of Insurance......................................................... 52

C. Arguments that an arbitration provision is not a "forum or venue selection clause" for

purposes of § 22:868 misunderstand
Louisiana law. .............................................................. 53

CONCLUSION .................................................................... 59

CERTIFICATE OF SERVICE ................................................. 61

CERTIFICATE OF COMPLIANCE ......................................... 61

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Sacred Heart of New Orleans v. Certain Underwriters at
   Lloyd's London,*
   No. 22-4401, 2023 WL 246832 (E.D. La. Jan. 18, 2023) ..................... 43

*Adriatic Fire Ins. Co. v. Treadwell,*
   108 U.S. 361 (1883) ............................................................................... 35

*Al Rushaid v. Nat'l Oilwell Varco, Inc.,*
   814 F.3d 300 (5th Cir. 2016) ................................................................ 22

*Alford v. Dean Witter Reynolds, Inc.,*
   975 F.2d 1161 (5th Cir. 1992) .............................................................. 23

*Allen v. Allen,*
   145 So. 3d 341 (La. 2014) ..................................................................... 56

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) ............................................................................... 45

*Breaux v. Lafourche Par. Council,*
   851 So. 2d 1173 (La. Ct. App. 2003) .................................................... 58

*Bufkin Enters., LLC v. Indian Harbor Ins. Co.,*
   No. 2:21-cv-04017, 2023 WL 2393700
   (W.D. La. Mar. 7, 2023) ........................................................ 29, 53, 54

*Coinbase, Inc. v. Bielski,*
   599 U.S. ----No. 22-105, 2023 WL 4138983 (June 23, 2023) ......... 22, 28

*Corpman v. Prudential-Bache Sec., Inc.,*
   907 F.2d 29 (3d Cir. 1990) ................................................................... 24

*Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.,*
   282 So. 3d 1042 (La. 2019) ....................................................... 54, 57, 58

xii

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................. 22, 23

*Detillier v. Kenner Reg'l Med. Ctr.*,
   877 So. 2d 100 (La. 2004) ............................................................ 56

*Donelon v. Shilling*,
   340 So. 3d 786 (La. 2020) ...................................................... 51, 55

*Duhon v. Activelaf, LLC*,
   --- So. 3d ----, No. 2016-CC-0818, 2016 WL 6123820
   (La. Oct. 19, 2016) ............................................................... 56, 57

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ..................................................................... 50

*Flintkote Co. v. Thomas*,
   223 So. 2d 676 (La. Ct. App. 1969) ..................................... 34, 35, 37

*Francisco v. STOLT ACHIEVEMENT MT*,
   293 F.3d 270 (5th Cir. 2002) ..................................... 15, 32, 39, 40

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu
   Stainless USA, LLC*,
   140 S. Ct. 1637 (2020) ................................................................. 40

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*,
   536 F.3d 439 (5th Cir. 2008) ...................................................... 51

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ................................................................. 27, 28

*Grigson v. Creative Artists Agency L.L.C.*,
   210 F.3d 524 (5th Cir. 2000) ............................................... *passim*

*Hodges v. Reasonover*,
   103 So. 3d 1069 (La. 2012) ............................................ 51, 53, 55

*Humana Inc. v. Forsyth*,
   525 U.S. 299 (1999) ..................................................................... 48

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) ............................................................. 23

*Koveleskie v. SBC Capital Markets, Inc.*,
    167 F.3d 361 (7th Cir. 1999) ........................................................... 26

*La. World Exposition v. Fed. Ins. Co.*,
    858 F.2d 233 (5th Cir. 1988) ........................................................... 58

*Lim v. Offshore Specialty Fabricators, Inc.*,
    404 F.3d 898 (5th Cir. 2005) ...................................................... 18, 50

*Marino v. Dillard's Inc.*,
    413 F.3d 530 (5th Cir. 2005) ........................................................... 18

*MAW Enters., L.L.C. v. City of Marksville*,
    149 So. 3d 210 (La. 2014) ............................................................... 56

*McDermott Int'l Inc. v. Underwriters at Lloyds*,
    981 F.2d 744 (5th Cir. 1993) ........................................................... 19

*McDermott Int'l, Inc. v. Lloyds Underwriters of London*,
    944 F.2d 1199 (5th Cir. 1991) ......................................................... 50

*McLaughlin Gormley King Co. v. Terminix Int'l Co.*,
    105 F.3d 1192 (8th Cir. 1997) ......................................................... 27

*Meierhenry Sargent LLP v. Williams*,
    915 F.3d 507 (8th Cir. 2019) ...................................................... 23, 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ......................................................... 31, 47, 50

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*,
    460 U.S. 1 (1983) ...................................................................... 6, 22

*Moss v. First Premier Bank*,
    835 F.3d 260 (2d Cir. 2016) ........................................................... 25

*Oblix, Inc. v. Winiecki,*
  374 F.3d 488 (7th Cir. 2004) ........................................................ 15, 19

*Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.,*
  910 F.2d 224 (5th Cir. 1990) ................................................................ 34

*Parish of St. Charles v. HDI Glob. Specialty SE,*
  Nos. 22-3404 et seq., 2023 WL 1419937
  (E.D. La. Jan. 31, 2023) ......................................................................... 42

*Pasquier, Batson & Co. v. Ewing,*
  367 So. 2d 28 (La. Ct. App. 1978) ........................................................ 38

*Pierce Founds., Inc. v. Jaroy Constr., Inc.,*
  190 So. 3d 298 (La. 2016) ...................................................................... 54

*Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.,*
  317 So. 3d 715 (La. Ct. App. 2020) ........................................... 40, 41, 43

*Preferred Care of Del., Inc. v. Estate of Hopkins ex rel. Hopkins,*
  845 F.3d 765 (6th Cir. 2017) ................................................................. 19

*Pre-Paid Legal Servs., Inc. v. Cahill,*
  786 F.3d 1287 (10th Cir. 2015) ............................................................. 25

*Regions Bank v. Weber,*
  53 So. 3d 1284 (La. Ct. App. 2010) ...................................................... 42

*Rent-A-Ctr. W., Inc. v. Jackson,*
  561 U.S. 63 (2010) .................................................................................. 48

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
  490 U.S. 477 (1989) ............................................................................... 50

*Saavedra v. Dealmaker Devs., LLC,*
  8 So. 3d 758, (La. Ct. App. 2009) ................................................... 41, 42

*Safer v. Nelson Fin. Grp., Inc.,*
  422 F.3d 289 (5th Cir. 2005) ................................................................. 45

*Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London,*
  587 F.3d 714 (5th Cir. 2009) ................................................... 50, 53, 57

*Salas v. GE Oil & Gas,*
   857 F.3d 278 (5th Cir. 2017) .......................................................... 25, 26

*Scherk v. Alberto-Culver Co.,*
   417 U.S. 506 (1974) ................................................................ *passim*

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex),*
   767 F.2d 1140 (5th Cir. 1985) .............................................................. 39

*Stadtlander v. Ryan's Fam. Steakhouses, Inc.,*
   794 So. 2d 881 (La. Ct. App. 2001) ................................................. 51, 55

*Stanley v. Cryer Drilling Co.,*
   36 So. 2d 9 (La. 1948) ........................................................................ 34

*Stedor Enters., Ltd. v. Armtex, Inc.,*
   947 F.2d 727 (4th Cir. 1991) .......................................................... 19, 22

*Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.,*
   82 So. 3d 473 (La. Ct. App. 2011) ..................................... 16, 17, 42, 44

*Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.,*
   858 F.2d 648 (11th Cir. 1988) (per curiam ........................................ 24

*Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.,*
   243 F.3d 906 (5th Cir. 2001) .......................................................... 18, 47

*Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.,*
   No. 22-2671, 2023 WL 4235565 (E.D. La. June 28, 2023) .................. 42

*Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.,*
   601 F.3d 329 (5th Cir. 2010) .............................................................. 18

*Transit Mgmt. of Se. La., Inc. v. Grp. Ins. Admin., Inc.,*
   226 F.3d 376 (5th Cir. 2000) .............................................. 34, 35, 37, 38

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,*
   484 U.S. 365 (1988) ........................................................................... 56

*Van Dusen v. Swift Transp. Co.,*
   830 F.3d 893 (9th Cir. 2016) .......................................................... 27, 28

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ................................................................. 46

*Webb v. Investacorp., Inc.*,
  89 F.3d 252 (5th Cir. 1996) .................................................... 46

**Federal Statutes and Treaties**

9 U.S.C. § 2 ........................................................... 17, 45, 47, 48

9 U.S.C. § 3 ................................................................ 10, 14, 48

9 U.S.C. § 4 ......................................................... 10, 14, 18, 48

9 U.S.C. § 16 .................................................................. 20, 28

9 U.S.C. § 16(a) ............................................................. *passim*

9 U.S.C. § 202 ..................................................... 1, 31, 32, 33

9 U.S.C. § 203 ....................................................................... 1

9 U.S.C. § 205 ....................................................................... 1

9 U.S.C. § 206 .................................................... 10, 14, 18, 31

15 U.S.C. § 12 .................................................................... 49

15 U.S.C. § 1012 ................................................. 45, 48, 52, 59

28 U.S.C. § 1332 ................................................................... 1

28 U.S.C. § 1441 ................................................................... 1

28 U.S.C. § 1446 ................................................................... 1

Convention on the Recognition and Enforcement of Foreign Arbitral
  Awards of June 10, 1958,
    art. II(3), 21 U.S.T. 2517, 1970 WL 104417 ........................ 30

**State Statutes**

La. Civ. Code art. 11 ...................................................... 54, 55

La. Civ. Code art. 13...............................................................56

La. Civ. Code art. 1787.........................................................34

La. Code Civ. Proc. art. 1 .....................................................57

La. Code. Civ. Proc. art. 41 ..................................................57

Louisiana Rev. Stat. § 22:868 .......................................... *passim*

Louisiana Revised Statutes § 9:2778.........................51, 52, 56

Louisiana Revised Statutes § 9:2779.........................51, 52, 56

Louisiana Revised Statutes § 38:2196............................52, 56

Louisiana Revised Statutes § 48:251.8............................52, 56

**Rules**

Fed. R. App. P. 32(a)..............................................................60

Fed. R. App. P. 32(f) ..............................................................60

Fed. R. Civ. P. 30(b)(6) ..........................................................12

**Other Authorities**

15B Charles Alan Wright, et al., *Federal Practice & Procedure*
§ 3914.17 (2d ed. 2022)....................................................20, 22

2 Steven Plitt, et al., *Couch on Insurance* § 22:40 (3d ed. 2023)............37

*Restatement (Second) of Contracts* § 1 (1981) .........................34

U.S.World & News Report, *Surplus Lines Insurance*,
   https://www.usnews.com/insurance/glossary/surplus-
   lines-insurance.....................................................................8

# JURISDICTIONAL STATEMENT

As explained in more detail in the body of Appellants' brief, this Court has appellate jurisdiction because this is an interlocutory appeal from a district court's effective denial of a motion to compel arbitration and refusal to stay proceedings pending arbitration. 9 U.S.C. §§ 16(a)(1)(A)-(C). The district court had subject matter jurisdiction because Appellee sued Appellants in Louisiana state court and Appellants properly removed the case to the federal district court under 9 U.S.C. § 205 and 28 U.S.C. §§ 1441 and 1446 based on the district court's subject matter jurisdiction over the case (i) under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. §§ 202, 203 and (ii) under 28 U.S.C. § 1332 because the matter in controversy exceeds the value of $75,000 and there is complete diversity between the parties.

## STATEMENT OF THE ISSUES

1.  The Federal Arbitration Act ("FAA") permits interlocutory appeal of orders that interfere with a party's right to arbitration, such as those "refusing" stays of federal proceedings in favor of arbitration and those "denying" motions to compel arbitration. 9 U.S.C. §§ 16(a)(1)(A)-(C). The district court effectively denied the Domestic Insurers' motion to compel arbitration and refused to stay the proceedings by ordering burdensome discovery purportedly relevant to the issue of arbitrability. Is the district court's order immediately appealable?

2.  The Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958 requires a United States court to compel arbitration if there is an agreement in writing providing for arbitration in the territory of a Convention signatory and a party to the agreement is foreign. A district court considering a motion to compel arbitration under the Convention may conduct only a "very limited inquiry" before ordering arbitration. Here, a group of domestic and foreign insurers issued the School Board of Cameron Parish a property insurance policy and the policy contained an arbitration provision to which all the parties collectively agreed. Did the district court err by not immediately

compelling arbitration under the Convention?

3.    The doctrine of equitable estoppel can be used to enforce arbitration agreements when a signatory to the contract containing the arbitration provision raises allegations of substantially interdependent and concerted misconduct by both a non-signatory and one or more signatories. The School Board of Cameron Parish alleged without differentiation that a group of domestic and foreign insurers wrongfully denied its insurance claims. The School Board then dropped its claims against the Foreign Insurers in an attempt to avoid the application of the Convention. Did equitable estoppel mandate the district court to compel arbitration under the Convention?

4.    The FAA requires courts to enforce arbitration agreements according to their terms. Under the McCarran-Ferguson Act, state laws that regulate the business of insurance can "reverse preempt" the FAA. Louisiana Revised Statutes § 22:868 generally bars arbitration provisions in insurance contracts but does not apply to policies for surplus insurance. The policy issued to the School Board by the insurers is for surplus insurance. Did the FAA require the district court to enforce the arbitration provision contained in the policy?

**STATEMENT REGARDING CONSOLIDATION OF APPEALS**

This Court granted the motion of Appellants Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; Safety Specialty Insurance Company; and Old Republic Union Insurance Company's (the "Domestic Insurers") to consolidate this appeal for the purposes of briefing and oral argument with Court of Appeals Docket No. 23-30181, *Cameron Parish Recreation #6 v. Indian Harbor Ins. Co., et al.*, and No. 23-30182, *Police Jury of Cameron Parish v. Indian Harbor Ins. Co., et al.* The three cases involve identical counsel, substantively identical insurance policies, and procedural histories before the same district court that do not vary in any respects material to the issues on appeal.

Therefore, for ease of the Court's review, the Domestic Insurers' brief expressly discusses the School Board of Cameron Parish's (the "School Board") surplus lines insurance policy only and the procedural history of the School Board case only. Unless specifically noted otherwise, this brief's analysis of the issues in the School Board case applies equally

to the cases involving Cameron Parish Recreation #6 ("Recreation") and the Police Jury of Cameron Parish ("Police Jury").

## INTRODUCTION

Through the use of arbitration provisions, parties entering into commercial contracts can decide *ex ante* that disputes arising out of those contracts are to be decided by a specific type of tribunal, in a specific location, and applying specific law. In addition to saving the parties the time and expense of litigation, arbitration agreements offer the parties predictability and consistency in the resolution of disputes. But those advantages wane if courts do not "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 22 (1983). This case is about a district court's refusal to follow that command.

Recognizing the benefits of arbitration, the parties here included an arbitration provision in their insurance policy. The surplus lines property insurance policy the Domestic Insurers and two foreign insurers issued to the School Board included a broad arbitration provision directing that all disputes arising out of the policy be referred to an arbitral tribunal in New York. The insurers issued this policy with the knowledge that if a dispute arose between them and the School Board relating to the policy,

multiple sources of law would protect their ability to arbitrate the dispute and halt the School Board's efforts to litigate the dispute in court. For one, the Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958 (the "Convention") mandates arbitration because foreign parties—the two foreign insurers—agreed to the policy's arbitration provision. For another, the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms and stay court proceedings pending arbitration.

The School Board, however, viewed matters differently after its property was damaged during Hurricane Laura in 2020. In direct violation of the policy's arbitration provision, the School Board sued the Domestic Insurers (but not the foreign insurers) in Louisiana state court alleging that they did not fully and timely pay the School Board's insurance claim for damage resulting from the hurricane. The Domestic Insurers removed the case to federal court and moved to compel arbitration. Instead of following the Convention and the FAA and promptly granting the Domestic Insurers' motion to compel arbitration, the district court indulged the School Board's transparent procedural gamesmanship by granting the School Board burdensome discovery from

the Domestic Insurers that would supposedly help the district court decide whether arbitration was required under the Convention. After their attempts to obtain relief from this discovery were denied by the district court, the Domestic Insurers appealed and filed an emergency motion for stay in this Court, which the Court granted.

The district court's discovery order effectively denied the Domestic Insurers' motion to compel arbitration and stay proceedings under the Convention and the FAA. It is time for this Court to put an end to the School Board's attempts to disown its agreement to arbitrate. This Court should vacate the district court's discovery order and remand with instructions for the district court to compel arbitration and stay proceedings.

**STATEMENT OF THE CASE**

## I.    Factual Background

This case involves a surplus lines commercial insurance policy.[1] The School Board, domestic insurance companies (the Domestic

---

[1] Surplus lines insurance is "specialized coverage written by unlicensed, nonadmitted insurance companies to cover specific extraordinary items and uncommon or high risks that are generally not covered by traditional insurance companies under standard policies." U.S. World & News Report, *Surplus Lines Insurance*, https://www.usnews.com/insurance/glossary/surplus-lines-insurance (last visited July 13, 2023).

Insurers),[2] and two foreign insurers—Certain Underwriters at Lloyd's, London (the "Lloyd's Underwriters") and HDI Global Specialty SE ("HDI Global," collectively with the Lloyd's Underwriters, the "Foreign Insurers," and, collectively with the Domestic Insurers, the "Insurers")— entered into an insurance agreement under a surplus lines commercial property insurance policy bearing Account No. 736268 (the "Policy"). ROA.23-30183.243-357. The Policy is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer. *See* ROA.23-30183.243-44, 245-49, 258-99.

The Policy includes a broad arbitration provision mandating that "[a]ll matters in difference between the [School Board] and the [Insurers] . . . in relation to this insurance, including its formation and validity, . . . shall be referred to an Arbitration Tribunal" seated in New York and applying New York law. ROA.23-30183.281. The arbitration provision further provides that a decision reached by the Arbitration Tribunal shall be binding and enforceable in a court of competent jurisdiction. ROA.23-30183.281.

---

[2] One of the Domestic Insurers, Steadfast Insurance Company, was not a party to the insurance agreement with Recreation. Steadfast Insurance Company was a party to the insurance agreements with the School Board and the Police Jury.

## II.    Procedural History

In August 2022, the School Board, in direct violation of the Policy's arbitration provision, sued the Domestic Insurers (but not the Foreign Insurers) in Louisiana state court for breach of contract and breach of the duty of good faith and fair dealing. ROA.23-30183.23-34. The School Board alleged that the Domestic Insurers did not fully and timely pay the School Board's insurance claim for property and business losses resulting from Hurricane Laura in August 2020. ROA.23-30183.23-34. The Domestic Insurers removed the case to the U.S. District Court for the Western District of Louisiana, where it was assigned to the Honorable James D. Cain, Jr. ROA.23-30183.12-22.

The Domestic Insurers moved to compel arbitration and stay the district court proceedings under 9 U.S.C. §§ 3, 4, and 206, explaining that the arbitration provision in the Policy must be enforced pursuant to the Convention and also pursuant to the FAA. ROA.23-30183.399-427. In response, the School Board moved for an extension of briefing deadlines and for a status conference, stating that the status conference was necessary "to discuss issues pertaining to the Defendants' Motion to Compel Arbitration and Stay the Proceedings, including plaintiff's need

10

to conduct limited discovery on the arbitration issues." ROA.23-30183.439-42. The telephone status conference was conducted the next day.

The district court filed the minutes of the status conference and an order, which stated:

> After hearing defendant's opposition, the court agreed to grant the extension as well as plaintiff's request for limited discovery into the policy numbers, certificate numbers, their relationship to the principal policy, and how they interact. Accordingly, the Motion for Extension [doc. 16] is hereby **GRANTED** and briefing is suspended pending completion of this discovery.

ROA.23-30183.444.

The Domestic Insurers moved the district court to stay all discovery until final resolution of their motion to compel arbitration and stay proceedings. ROA.23-30183.448-57. In a two-page memorandum order, the district court denied the Domestic Insurers' motion, stating that it "[stood] by its original decision to allow discovery" and that the parties shall "complete their discovery into the policies comprising the insurance contract(s) and allocation among the insurers (including the Contract

Allocation Endorsement, referring to separate contracts), as well as any contracts between the insurers," by April 14.[3] ROA.23-30183.655-56.

The Domestic Insurers then moved for a protective order, ROA.23-30183.665-87, which the district court denied on March 23, ROA.23-30183.829.[4] The School Board served notices of depositions of the Domestic Insurers' corporate representatives under Federal Rule of Civil Procedure 30(b)(6). These notices were directed to each of the eight Domestic Insurers and designated as deposition topics information relating to the insurance agreement and the component policies, and to the relationships between the Insurers. This included information about how the insurance agreement and component policies "interact," the "allocation among the insurers," and "[a]ll information pertaining to 'policy formation and structure.'" *See* No. 23-30183, Dkt. 12 App. Tab B.

---

[3]    In the Police Jury appeal, No. 23-30182, the district court did not deny the Domestic Insurers' motion to stay until March 23, 2023 and did so in the form of an electronic order, not a memorandum order. *See* ROA.23-30182.9, *Police Jury of Cameron Par. v. Indian Harbor Ins. Co., et al.*, No. 2:22-cv-5348 (E.D. La.), Dkt. 24.

[4]    The Domestic Insurers did not move for a protective order in the Police Jury case, as the district court did not deny the Domestic Insurers' motion to stay until March 23, 2023. *See* ROA.23-30182.9, *Police Jury of Cameron Par. v. Indian Harbor Ins. Co., et al.*, No. 2:22-cv-5348 (E.D. La.), Dkt. 24.

The School Board additionally served notices of requests for production of documents, requiring the Domestic Insurers to search for and produce an expansive set of materials, most of which have no relationship to the arbitration issue. For example, the notices request production of all documentation and electronically stored information relating to the Domestic Insurers' contracts and relationships with certain third parties whom the Domestic Insurers engaged to help provide their insurance products. *See* No. 23-30183, Dkt. 12 App. Tab B.

The Domestic Insurers filed a notice of appeal, ROA.23-30183.830-32, and moved in this Court for an emergency stay of the district court's discovery order pending this Court's resolution of appeal, No. 23-30183, Dkt. 12. This Court granted the Domestic Insurers an administrative stay of discovery and directed them to file a letter on whether the Court had jurisdiction over their requested relief. ROA.23-30183.833-35. The Domestic Insurers filed a letter in the Recreation appeal explaining why the Court had jurisdiction over their request that the Court issue a stay of pre-arbitration discovery, No. 23-30181, Dkt. 30,[5] and Recreation filed

---

[5] The Domestic Insurers filed letters in the School Board and Police Jury appeals that incorporated their letter in Recreation by reference. *See* No. 23-30183, Dkt. 31; No. 23-30182, Dkt. 28.

a letter contending that the Court lacked jurisdiction, No.23-30181, Dkt. 37.[6] On April 21, this Court granted the Domestic Insurers' motion for stay in the Recreation, Police Jury, and School Board appeals. No. 23-30181, Dkt. 45; No. 23-30182, Dkt. 42; No. 23-30183, Dkt. 45.

## SUMMARY OF THE ARGUMENT

This Court should vacate the district court's discovery order and remand the case with instructions for the district court to grant the Domestic Insurers' motion to compel arbitration and stay the proceedings pending arbitration.

As an initial matter, the Court has jurisdiction to review the district court's discovery order under 9 U.S.C. §§ 16(a)(1)(A), (B), and (C) because the order effectively denied the Domestic Insurers' motion to compel arbitration under 9 U.S.C. §§ 4 and 206 and refused the Domestic Insurers' motion to stay the action pending arbitration under 9 U.S.C. § 3. The bottom line is that "an order continuing the litigation, and refusing to direct arbitration, during discovery into issues that the district judge believes will affect arbitrability, is immediately

---

[6]    School Board and Police Jury filed letters in their respective appeals that incorporated Recreation's letter by reference. *See* No. 23-30183, Dkt. 38; No. 23-30182, Dkt. 35.

appealable." *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 489 (7th Cir. 2004) (Easterbrook, J.). That is the case as to the district court's discovery order here, which in fact permits discovery far beyond whether the parties agreed to an arbitration provision.

On the merits, the Convention requires the district court to grant the Domestic Insurers' motion to compel arbitration and stay the proceedings because the Policy's arbitration provision (1) "is an agreement in writing to arbitrate" the claims asserted by the School Board; (2) provides for arbitration in New York (within the "territory of a Convention signatory"); (3) "arises out of a commercial legal relationship"; and (4) has "a party to the agreement [that] is not an American citizen" because the Foreign Insurers are parties to the Policy along with the Domestic Insurers. *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002). The plain language of the Policy shows that it is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer, with each Insurer being severally obligated for its component coverage part. The Policy is thus one agreement to which all the Insurers—domestic and foreign— are parties. Moreover, at the very least the arbitration provision was

agreed to collectively by all the Insurers. Because the Policy includes an agreement to arbitrate that includes a foreign entity as a party, the district court erred in not compelling arbitration under the Convention.

Further, even accepting the School Board's contention that the Insurers' contracts are all separate, the doctrine of equitable estoppel would still mandate arbitration under the Convention. Under Louisiana law, "[t]he linchpin for equitable estoppel is equity-fairness," *Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.*, 82 So. 3d 473, 478 (La. Ct. App. 2011), and equitable estoppel applies to compel arbitration when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract. The School Board asserted its initial insurance claim against all the Insurers—including the Foreign Insurers—and thereby called upon the Foreign Insurers to perform under the contract, which they did. The School Board has nakedly admitted that it then dropped its claims against the Foreign Insurers "[s]o as not to invoke the Convention on the Recognition and Enforcement of Foreign Arbitral Awards," not because the Foreign Insurers did not engage in the same conduct of which it

16

accuses the Domestic Insurers. Because the School Board has "raise[d] allegations of substantially interdependent and concerted misconduct by both" the Domestic Insurers and the Foreign Insurers and it "would fly in the face of fairness" to allow the School Board to avoid the application of the Convention through its procedural gamesmanship, equitable estoppel mandates arbitration under the Convention. *Id.*

A straightforward application of the FAA also required the district court to grant the Domestic Insurers' motion to compel arbitration and to stay proceedings pending arbitration. The arbitration provision contained in the Policy is "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" and is therefore "valid, irrevocable, and enforceable" under the FAA. 9 U.S.C. § 2. So-called "reverse preemption" under the McCarran-Ferguson Act is not applicable because La. Rev. Stat. § 22:868's bar of arbitration provisions in insurance contracts does not apply to surplus lines insurance, such as the Policy.

# ARGUMENT

## I.    Standard of review.

This Court reviews de novo the denial of a motion to compel arbitration and the refusal to stay proceedings pending arbitration. *Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005); *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 908 (5th Cir. 2001). This Court likewise reviews a district court's interpretation of state law de novo. *Marino v. Dillard's Inc.*, 413 F.3d 530, 532 (5th Cir. 2005). A district court's decision not to enforce an arbitration agreement through the use of equitable estoppel is reviewed for abuse of discretion. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). Appellate jurisdiction is, of course, reviewed de novo.

## II.    This Court has jurisdiction to review the district court's discovery order.

The Court has jurisdiction to review the district court's discovery order under 9 U.S.C. §§ 16(a)(1)(A), (B), and (C) because the order effectively denied the Domestic Insurers' motion to compel arbitration under 9 U.S.C. §§ 4 and 206 and refused the Domestic Insurers' motion

to stay the action pending arbitration under 9 U.S.C. § 3. The bottom line is that "an order continuing the litigation, and refusing to direct arbitration, during discovery into issues that the district judge believes will affect arbitrability, is immediately appealable." *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 489 (7th Cir. 2004) (Easterbrook, J.).

### A. Title 9 U.S.C. § 16(a) permits interlocutory appeals of orders favoring litigation over arbitration.

The FAA "manifests a liberal federal policy favoring arbitration," and 9 U.S.C. § 16(a) "promotes this policy by permitting interlocutory appeals of orders favoring litigation over arbitration and precluding review of interlocutory orders that favor arbitration." *McDermott Int'l Inc. v. Underwriters at Lloyds*, 981 F.2d 744, 746-47 (5th Cir. 1993) (quotations omitted); *accord Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir. 1991) (Wilkinson, J.) ("The broad purpose of section 16 was to implement Congress' deliberate determination that appeal rules should reflect a strong policy favoring arbitration." (quotation omitted)); *see also Preferred Care of Del., Inc. v. Estate of Hopkins ex rel. Hopkins*, 845 F.3d 765, 768 (6th Cir. 2017) (Sutton, J.) ("[The FAA] permits review of orders that interfere with arbitration, such as those 'refusing' stays of federal proceedings in favor of arbitration and those 'denying' petitions

to enforce arbitration agreements. . . ."); 15B Charles Alan Wright, et al., *Federal Practice & Procedure* § 3914.17 (2d ed. 2022) (the appellate framework contained in § 16(a) "rests on a choice to allow immediate appeal from orders that give litigation precedence over arbitration").

As relevant here, 9 U.S.C. § 16 provides:

(a) An appeal may be taken from–

(1) an order–

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed, [or]

(C) denying an application under section 206 of this title to compel arbitration . . . .

**B.    The district court effectively denied the Domestic Insurers' motion to compel arbitration and stay the proceedings, making its order appealable under 9 U.S.C. §§ 16(a)(1)(A), (B), and (C).**

Here, the Domestic Insurers moved to compel arbitration and stay the district court proceedings under the FAA and the Convention based on a straightforward application of a broad and unambiguous arbitration provision contained in the surplus lines insurance policy they entered into with the School Board. After considering the Domestic Insurers' motion, however, the district court deferred deciding the motions to

compel arbitration and stay the case and elected to instead grant the School Board's request for discovery "into the policies comprising the insurance contract(s) and allocation among the insurers (including the Contract Allocation Endorsement, referring to separate contracts), as well as any contracts between the insurers whether referenced in the policy or not." ROA.23-30183.655.

In doing so, the district court effectively denied the Domestic Insurers' motion to compel arbitration and stay the proceedings, making its order appealable under 9 U.S.C. §§ 16(a)(1)(A), (B), and (C). Although the district court did not expressly characterize its order as a "denial" of the Domestic Insurers' motion to compel arbitration or a "refusal" to stay proceedings pending arbitration, both the purposes of the FAA and directly analogous case law from federal appellate courts across the country show that § 16(a) follows substance over form.

Consider the purposes and policy preferences reflected in § 16(a)(1)'s mandate that a party may immediately appeal a district court's order denying a motion to compel arbitration or refusing to stay proceedings pending arbitration. The FAA "functions 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and

easily as possible' and represents a 'statutory policy of rapid and unobstructed enforcement of arbitration agreements.'" *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 303 (5th Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). Subsections 16(a)(1)(B) and (C) "serve[] this function and policy," *id.*, and command that "a party who believes that arbitration is required by an agreement between the parties need not suffer the expense and inconvenience of litigation before receiving appellate review of a district court judgment that arbitration was inappropriate," *Stedor Enters.*, 947 F.2d at 730. *See also* 15B Wright, et al., *Federal Practice & Procedure* § 3914.17 ("[T]he very purpose of permitting [interlocutory arbitration] appeal[s] is to avoid the costs that can arise from duplicating judicial and arbitral proceedings.").[7] Moreover, the FAA "leaves no place for the exercise of discretion by a district court" and requires a district court to immediately order the "parties to proceed to arbitration on issues as to

---

[7] The Supreme Court has recently emphasized interlocutory appeals' importance in protecting the benefits of arbitration. *See Coinbase, Inc. v. Bielski*, 599 U.S. ----No. 22-105, 2023 WL 4138983, at *4 (June 23, 2023) ("If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along.").

which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The district court's order refusing to compel arbitration before discovery on arbitrability violates this principle and frustrates the FAA's purposes just the same as an order that is expressly described as a "denial" of a motion to compel. *See Meierhenry Sargent LLP v. Williams*, 915 F.3d 507, 509 (8th Cir. 2019) ("[Appellate] jurisdiction rests on the substance of the [district court's] order, . . . not simply what the district court chose to call it.").

Likewise, § 16(a)(1)(A)'s provision that a district court's denial of a stay is immediately appealable serves the FAA's policy of rapid enforcement of arbitration agreements because "[a] stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015). A stay is "mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration," *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)

(quotation omitted), and the district court here violated this principle by refusing to grant the Domestic Insurers' motion for stay and instead continuing the litigation and ordering that the parties engage in cumbersome discovery regarding arbitrability and beyond. *Cf. Corpman v. Prudential-Bache Sec., Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) (per curiam) ("Where an action has been stayed pending arbitration, a district court may not permit the parties to conduct discovery under the Federal Rules of Civil Procedure."); *Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (per curiam) (concluding that "district court erred in refusing to stay discovery" because "[a]n agreement to arbitrate is an agreement to proceed under arbitration and not under court rules").

## C. Federal appellate case law further shows that the district court's order is immediately appealable under 9 U.S.C. § 16(a)(1).

Case law from federal appellate courts across the country (including from this Court) further shows that the district court's order effectively denying the Domestic Insurers' motion to compel arbitration and refusing the stay requested by the Domestic Insurers is immediately appealable under § 16(a)(1). Because "[appellate] jurisdiction rests on the

substance of the [district court's] order," *Meierhenry*, 915 F.3d at 509, courts have ruled that district court orders that "effectively" or "in essence" deny a motion to compel arbitration or refuse a stay of proceedings support appellate jurisdiction under § 16(a)(1). *See Moss v. First Premier Bank*, 835 F.3d 260, 264 (2d Cir. 2016) (concluding that an order lifting a stay pending arbitration "was effectively one refusing a stay") (quotation omitted); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1290 (10th Cir. 2015) (focusing on broad nature of the term "refuse" in § 16(a)(1)(A)).

Indeed, this Court has so ruled in *Salas v. GE Oil & Gas*, 857 F.3d 278 (5th Cir. 2017). There, the district court initially granted the defendant's motion to compel arbitration, but the parties did not move forward with arbitration. *Id.* at 279. The plaintiff then moved to compel arbitration, and, following a telephonic conference, the court issued an order that did not expressly address the plaintiff's motion but did reopen the case and withdraw the district court's earlier order compelling arbitration. *Id.* at 279-80. This Court concluded that the district court's order "[i]n essence . . . did deny an application to compel arbitration" and

that appellate jurisdiction therefore existed under § 16(a)(1)(C). *Id.* at 280 (emphasis added).

Furthermore, cases specifically considering the appealability of district court decisions ordering pre-arbitration discovery also show that the district court's order supports appellate jurisdiction under § 16(a)(1). For instance, *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir. 1999), a case cited approvingly by this Court in *Salas*, dealt with procedural circumstances substantively identical to those presented in this case. There, a defendant moved to compel arbitration, but the district court "refused to compel arbitration, concluding that 'under recent authority, the discovery sought by plaintiff is appropriate before a decision can be reached on the arbitration issue.'" *Id.* at 363. The Seventh Circuit nonetheless concluded that it had appellate jurisdiction over the district court's order under § 16(a)(1) because it had "no doubt from the record that the district court denied the defendant's motion and clearly meant to foreclose arbitration." *Id.*

Likewise, in *Madol v. Dan Nelson Automotive Group*, 372 F.3d 997 (8th Cir. 2004), the Eighth Circuit concluded that where the district court set aside a magistrate judge's order compelling arbitration and staying

26

litigation and reopened discovery so that the parties could further develop the evidentiary record regarding arbitration, the district court's order "was an order 'refusing a stay' and directing that the litigation proceed, and was thus appealable under § 16(a)." *Id.* at 998-98; *see also McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1193 (8th Cir. 1997) (ruling that district court's order that parties engage in discovery pertinent to issue of arbitrability was "an order that favors litigation over arbitration" and was immediately appealable (quotation omitted)).

To be sure, the Ninth Circuit's decision in *Van Dusen v. Swift Transportation Co.*, 830 F.3d 893 (9th Cir. 2016), expresses a different view. That panel's logic, however, is not persuasive and should not be followed by this Court. In *Van Dusen*, the Ninth Circuit rejected the defendant's argument that a district court's order of discovery relating to the arbitrability of the parties' dispute was an effective denial of the defendant's motion to compel arbitration that supported appellate jurisdiction under § 16(a)(1)(B). *Id.* at 897-99. In reaching this conclusion, the Ninth Circuit relied heavily on the Supreme Court's decision in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S.

79 (2000), contending that the *Green Tree* Court "clarified that appeals under the FAA are limited to the specific set of orders and decisions specified in § 16." *Van Dusen*, 830 F.3d at 898.

The *Green Tree* Court implicitly made this point, *see* 531 U.S. at 84, but that says nothing about how appellate courts are to assess whether a particular district court order is in fact one of the orders listed in § 16. Indeed, *Green Tree* focused on whether a district court's order compelling arbitration and dismissing a party's underlying claims was appealable under § 16(a)(3) as a "final decision with respect to an arbitration," *see* 531 U.S. at 82, and had nothing to do with the interpretation of § 16(a)(1)(A), (B), or (C) or whether effective denials of motions to compel arbitration or to stay proceedings fell within those subsections. *Green Tree* thus does not support the Ninth Circuit's conclusion in *Van Dusen*, and this Court should decline to follow *Van Dusen*.[8]

---

[8]  *Van Dusen* is not the only instance where the Ninth Circuit's caselaw regarding appeals under § 16 is out of step with other courts of appeals. *See Coinbase*, 2023 WL 4138983, at *3, *4, *7 (noting that most courts of appeals to address issue have held that § 16(a) requires a district court to stay proceedings pending appeal and reversing Ninth Circuit order declining to stay district court proceedings pending appeal).

**D.    The needlessness of the ordered discovery underscores that the district court's discovery order was a denial of a motion to compel arbitration and a refusal to stay proceedings.**

Last, that the district court's order of discovery here was a denial of a motion to compel arbitration and a refusal to stay proceedings for purposes of § 16(a)(1)(A), (B), and (C) is reinforced by the needlessness of the ordered discovery. As the Domestic Insurers explain elsewhere in this brief, the undisputed facts in the record compel the conclusion that arbitration and a stay are required, and the discovery ordered by the district court is wholly unnecessary and meaningless. In fact, in *Bufkin Enterprises, LLC v. Indian Harbor Insurance Co.*, No. 2:21-cv-04017, 2023 WL 2393700 (W.D. La. Mar. 7, 2023), the same district court judge considered a motion to compel arbitration and stay proceedings that was substantively identical to the one filed in this case and was made by virtually the same insurers, but denied the motion without ordering additional discovery. Because the discovery ordered by the district court here is unnecessary and is delaying arbitration for no proper reason, there is an especially strong reason for concluding that the district court's order was a denial of a motion to compel arbitration and a refusal to stay proceedings giving rise to appellate jurisdiction under § 16(a)(1).

## III. The Convention requires the district court to enforce the Policy's arbitration provision.

The Convention requires the district court to grant the Domestic Insurers' motion to compel arbitration and stay the proceedings.

The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. The "goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

As relevant here, the Convention provides:

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 art. II(3), 21 U.S.T. 2517, 1970 WL 104417.

The Convention Act, the federal law implementing the Convention, provides that "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202. The Convention Act further provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

Further, and more generally, there is "a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions" that "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

### A. The Policy's arbitration provision meets all the requirements for enforcement under the Convention, including the requirement that a party to the arbitration provision is not an American citizen.

This Court has held that the Convention "contemplates a very limited inquiry by courts when considering a motion to compel arbitration," and that a court should compel arbitration under the

Convention if "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002) (quotation omitted). To fail prong 4 of that test, the commercial relationship must be "*entirely* between citizens of the United States." 9 U.S.C. § 202 (emphasis added).

The Policy's arbitration provision meets all these requirements. The provision is broad and mandates that "[a]ll matters in difference between the [School Board] and the [Insurers] . . . in relation to this insurance, including its formation and validity, . . . shall be referred to an Arbitration Tribunal" seated in New York and applying New York law. ROA.23-30183.281 The Policy's arbitration provision thus (1) "is an agreement in writing to arbitrate" the claims asserted by the School Board; (2) provides for arbitration in New York (within the "territory of a Convention signatory"); (3) "arises out of a commercial legal relationship"; and (4) has "a party to the agreement [that] is not an

American citizen" because the Foreign Insurers are parties to the Policy along with the Domestic Insurers. *Id.*

The School Board's only argument offered in the district court in support of its attempt to escape arbitration under the Convention was that the Policy was not one agreement, but instead only ten separate agreements with each individual insurer. Thus, because the Foreign Insurers are not defendants in this case, there is no agreement with any foreign entity that provides for arbitration. ROA.23-30183.632-33, 636-42. This argument clashes directly with both the contract and the statutory text at the most basic level. First, the School Board's entire framing is incorrect. It relies on the Contract Allocation Endorsement's text that the policy must be "constructed" as individual contracts with each insurer. ROA.23-30183.247-48. But that very provision shows that there is an overarching contract to which all parties (including the Foreign Insurers) are party—the Insurers and the School Board are collectively agreeing to a contractual provision. If the phrase "entirely between American citizens" in § 202 is to mean anything, it must mean that a composite insurance policy that may well have individual subparts is covered by the Convention.

In any event, the School Board's argument flies in the face of black letter contract law—Louisiana law included. Under Louisiana law, "an insurance policy is a contract, and the rules established for the construction of written instruments apply to contracts for insurance." *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 232 (5th Cir. 1990) (citing *Stanley v. Cryer Drilling Co.*, 36 So. 2d 9 (La. 1948)). As a matter of general contract law, "[a] contract may consist of a single promise by one person to another, or of mutual promises by two persons to one another; or there may be, indeed, any number of persons or any number of promises." *Restatement (Second) of Contracts* § 1 cmt. c (1981). And as this Court has explained in interpreting Louisiana contract law, "[m]ultiple obligations contained within a single agreement or contract may be solidary, joint, or several." *Transit Mgmt. of Se. La., Inc. v. Grp. Ins. Admin., Inc.*, 226 F.3d 376, 386 (5th Cir. 2000) (quoting *Flintkote Co. v. Thomas*, 223 So. 2d 676, 678 (La. Ct. App. 1969)). "When each of different obligors owes a separate performance to one obligee, the obligation is several for the obligors." La. Civ. Code art. 1787.

Applying these precepts, the test for "whether an obligor may be held for the whole or for only a proportionate part of the obligation is essentially whether the two obligors each promised the same or full performance or whether each promised only a different performance, that is to pay a proportionate part of the liability." *Transit Mgmt.*, 226 F.3d at 386 (quoting *Flintkote*, 223 So. 2d at 678). This Court has recognized that under this framework, "[several] obligations, *although they may be contained in the same contract*, are considered as much individual and distinct as if they had been in different contracts and made at different times." *Id.* (quoting *Flintkote Co.*, 223 So. 2d at 678 (emphasis added)). Thus, a contract containing multiple parties and several obligations remains one unified agreement. *See id.*; 12 Richard A. Lord, *Williston on Contracts* § 36.1 (4th ed. 2023) ("A several obligation . . . has the effect of creating two separate liabilities *on a single contract*." (emphasis added)); *see also Adriatic Fire Ins. Co. v. Treadwell*, 108 U.S. 361, 365 (1883) (describing companies' several liability as all being under one contract or agreement).

Here, the plain language of the Policy shows that it is structured as one overall policy that contains component coverage parts supplied by

policies from each Insurer, with each Insurer being severally obligated for its component coverage part. *See* ROA.23-30183.243-44, 245-49, 258-99. This is expressly stated in bold language in the Declarations Page of the Policy, which states that "[t]his Policy consists of the following coverage parts for which a premium is indicated" and then lists each "commercial property coverage part" supplied by the Insurers. ROA.23-30183.244. That same Declarations Page is signed by a single employee of the Insurers' program manager—AmRisc, LLC—on behalf of all of the Insurers. ROA.23-30183.244. There is also a "Contact and Complaints" notice at the end of the Policy that directs concerns or complaints about the Policy to AmRisc and explains that AmRisc is "the managing general agent and/or Correspondent and/or Program Manager that has placed your *insurance policy*"—singular—"with the insurance carrier(s) listed on your policy declarations page." ROA.23-30183.356 (emphasis added).

That each Insurer is severally liable for its coverage part is made plain in § VII(W) in the Compass Commercial Property Form, which is titled "SEVERAL LIABILITY NOTICE":

> The liability of an insurer under this Policy is several and not joint with other insurers party to this Policy. An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability

underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this Policy.

The proportion of liability under this Policy underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this Policy.

ROA.23-30183.287

The Policy's Contract Allocation Endorsement likewise provides that "[t]his insurance is effected with certain insurance underwriters" and that "[t]he liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule" listed on that page. ROA.23-30183.247. To reinforce that each Insurer bears several liability for its own coverage part, the Contract Allocation Endorsement provides that "[t]he liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown" in a schedule on that page and further provides that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters." ROA.23-30183.247.

Contrary to the School Board's argument, the provision that "[t]his contract shall be constructed as a separate contract between the Insured

and each of the Underwriters" does not mean the Policy is not a single agreement and is instead only separate contracts. Rather, it shows that the Insurers intended that their respective obligations to the School Board contained within the Policy be several. Notably, the provision closely tracks this Court's own recitation of several liability under Louisiana law: "[several] obligations, *although they may be contained in the same contract*, are considered as much individual and distinct as if they had been in different contracts and made at different times." *Transit Mgmt.*, 226 F.3d at 386 (quoting *Flintkote Co.*, 223 So. 2d at 678 (emphasis added)); *see* 2 Steven Plitt, et al., *Couch on Insurance* § 22:40 (3d ed. 2023) ("The judicial construction placed upon particular words or phrases made prior to the issuance of a policy employing them will be presumed to have been the construction intended to be adopted by the parties . . . ."). Although the Insurers' obligations are separate, black letter law dictates that the Policy remains a single contract or agreement between all of the Insurers and the School Board. *See id.*; *Pasquier, Batson & Co. v. Ewing*, 367 So. 2d 28, 30 (La. Ct. App. 1978) ("Those agreements wherein several promisors obligate themselves to perform different and distinct acts are classified as several although *contained in*

*the same contract.*" (emphasis added)); 12 Lord, *Williston on Contracts* § 36.1 ("A several obligation . . . has the effect of creating two separate liabilities *on a single contract.*" (emphasis added)).

Because the Policy is between domestic and foreign entities and contains an arbitration provision, the Convention covers it and mandates arbitration. *See Francisco*, 293 F.3d at 273.

Further, even ignoring that the entire Policy is between domestic and foreign entities, at the very least the arbitration provision was agreed to collectively by all the Insurers—including the Foreign Insurers—and the School Board. The arbitration provision is found not in any individual coverage part, but instead in the Policy's general Compass Commercial Property Form in which all the Insurers are referred to collectively. ROA.23-30183.258-99. For example, the Compass Commercial Property Form provides, "EXCLUSIONS: The Companies do not insure for loss or damage caused directly or indirectly by any of the following. . . ." ROA.23-30183.258. And, as directly relevant here, the arbitration provision in the Compass Commercial Property Form expressly defines "the parties" to the arbitration provision as "the Insured and the *Companies*"—plural. ROA.23-30183.281 (emphasis

added). That is what is necessary to compel arbitration under the Convention—an "agreement in writing to arbitrate the dispute" and "a party to the agreement is not an American citizen." *Francisco*, 293 F.3d at 273; *see Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144-45 (5th Cir. 1985). Domestic and foreign entities need not necessarily both be parties to the same contract giving rise to the substantive claims that will be arbitrated. *See Francisco*, 293 F.3d at 273.

## B. Even if the Insurers' contracts were considered to be only separate, equitable estoppel would still mandate arbitration under the Convention.

Even accepting the School Board's contention that the Insurers' contracts are all separate, the doctrine of equitable estoppel would still mandate arbitration under the Convention.

"[S]tate-law doctrines related to the enforcement of arbitration agreements," including the doctrine of equitable estoppel, still apply in the application of the Convention and the Convention Act. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-45 (2020). Like many other courts, Louisiana courts have used equitable estoppel to enforce arbitration agreements. In

*Pontchartrain Natural Gas Systems v. Texas Brine Co.*, 317 So. 3d 715 (La. Ct. App. 2020), the court considered this Court's ruling in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), and adopted its principles as a matter of Louisiana law. In *Grigson*, this Court concluded that "the principle of equitable estoppel could allow a non-signatory to a contract with an arbitration clause to compel arbitration with a signatory." *Pontchartrain Nat. Gas*, 317 So. 3d at 743 (citing *Grigson*, 210 F.3d at 527-28). One situation where this is appropriate is "when a signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Id.* (citing *Grigson*, 210 F.3d at 527). A second situation is "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* (citing *Grigson*, 210 F.3d at 527). The *Pontchartrain* court concluded that equitable estoppel was appropriate because the second situation was present: "Although Texas Brine carefully pleaded its claims" separately against signatories and non-signatories to the relevant arbitration agreement, the court "did not find

41

that the various tortious acts [were] wholly separate and apart from each other." *Id.* at 744. Thus, under equitable estoppel, all of Texas Brine's claims were "subject to consideration by the arbitration panel." *Id.*

Similarly, in *Saavedra v. Dealmaker Developments, LLC*, 8 So. 3d 758, (La. Ct. App. 2009), the court of appeals held that it "agree[d]" with *Grigson*'s holding that "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 763 n.5 (quoting *Grigson*, 210 F.3d at 527). And in *Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.*, 82 So. 3d 473 (La. Ct. App. 2011), the court of appeals approvingly cited *Grigson* and stated that "[t]he linchpin for equitable estoppel is equity-fairness" and that "to not apply this intertwined-claim basis to compel arbitration would fly in the face of fairness." *Id.* at 478 (alteration in original) (quoting *Grigson*, 210 F.3d at 528). *Regions Bank v. Weber*, 53 So. 3d 1284, 1291 (La. Ct. App. 2010), is to similar effect.

In line with these decisions of Louisiana courts, numerous federal district court decisions applying Louisiana law have, in cases similar to

this case, concluded that equitable estoppel is appropriate to compel arbitration under the Convention. *See, e.g.*, *Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.*, No. 22-2671, 2023 WL 4235565, at *3 (E.D. La. June 28, 2023) (collecting cases); *Parish of St. Charles v. HDI Glob. Specialty SE*, Nos. 22-3404 et seq., 2023 WL 1419937, at *4 (E.D. La. Jan. 31, 2023) ("[E]quitable estoppel applies to preclude the Parish from objecting to arbitration as to the domestic insurers because the Parish's claims against all Defendants are inextricably intertwined."); *Acad. of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, No. 22-4401, 2023 WL 246832, at *4 & n.19 (E.D. La. Jan. 18, 2023).

Here, even if—contrary to the facts—the Insurers' contracts with the School Board were found to be all separate contracts, and somehow the Convention does not apply by its text, the School Board has "raise[d] allegations of substantially interdependent and concerted misconduct by both" the Domestic Insurers and the Foreign Insurers that would make the Convention applicable to the Domestic Insurers' agreements by virtue of equitable estoppel. *Pontchartrain Nat. Gas*, 317 So. 3d at 743. The School Board asserted its initial insurance claim against all the Insurers—including the Foreign Insurers—and thereby called upon the

43

Foreign Insurers to perform under the contract, which they did. The School Board has nakedly admitted that it then dropped its claims against the Foreign Insurers "[s]o as not to invoke the Convention on the Recognition and Enforcement of Foreign Arbitral Awards," ROA.23-30183.633, not because the Foreign Insurers did not engage in the same conduct of which it accuses the Domestic Insurers.

When the Insurers agreed to insure the School Board's property under the Policy, they did so with the knowledge that foreign insurers were participating and that the Convention would therefore apply to enforce the Policy's arbitration provision should the School Board attempt to not honor that arbitration provision. "[T]he linchpin for equitable estoppel is equity-fairness," and to allow the School Board to subvert through transparent procedural gamesmanship the settled expectation that the Convention would apply "would fly in the face of fairness." *Sturdy Built Homes*, 82 So. 3d at 478 (quoting *Grigson*, 210 F.3d at 528). Therefore, even accepting the School Board's contention that the Insurers' contracts are all separate, equitable estoppel would still mandate arbitration under the Convention. After all, the School

Board is the party resisting arbitration despite agreeing to arbitrate with all of the Insurers.

## IV. The FAA requires the district court to enforce the Policy's arbitration provision.

Independent of the Convention, a straightforward application of the FAA also required the district court to grant the Domestic Insurers' motion to compel arbitration and to stay proceedings pending arbitration. The McCarran-Ferguson Act, 15 U.S.C. § 1012, permits states to "reverse-preempt" the FAA. Louisiana, in La. Rev. Stat. § 22:868, has barred arbitration provisions for many types of insurance policies. But that bar does not apply to "forum selection" clauses in surplus lines policies, like those at issue here. Thus, this dispute is arbitrable.

The arguments the School Board will likely rely on to disturb this straightforward conclusion flatly misread § 22:868. Under the plainest meaning of the statutory text, an arbitration clause is a forum selection clause, as this Court, Louisiana courts, and the Supreme Court have held again and again. Any argument otherwise misunderstands the nature of an arbitration clause.

### A. The FAA mandates that the arbitration provision in the Policy is valid and enforceable.

45

The FAA was enacted by Congress "in response to widespread judicial hostility to arbitration" and aims "to ensure judicial enforcement of privately made agreements to arbitrate." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (quotation omitted). Section 2 of the FAA provides that such contracts are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. This provision reflects both "a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (citations and quotations omitted); *see Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) ("The Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration."). Thus, as a general matter, the FAA "pre-empts application of state laws which render arbitration agreements unenforceable." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989).

In ruling on a party's motion to compel arbitration under the FAA, "courts generally conduct a two-step inquiry." *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996) (per curiam). "The first step is to determine whether the parties agreed to arbitrate the dispute in question," which turns on (i) whether there is a valid agreement between

the parties and (ii) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 258. "The second step is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 628).

The analysis for ruling on a motion to stay proceedings pending arbitration is largely the same. Section 3 of the FAA "requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement." *Texaco Expl.*, 243 F.3d at 909 (quotation omitted). If the issues in the case are within reach of the agreement, the district court must grant the stay. *Id.*; 9 U.S.C. § 3.

Here, the Policy's arbitration provision is broad and mandates that "[a]ll matters in difference between the [School Board] and the [Insurers] . . . in relation to this insurance, including its formation and validity, . . . shall be referred to an Arbitration Tribunal" seated in New York and applying New York law. ROA.23-30183.281. This arbitration provision is "[a] written provision in . . . a contract evidencing a transaction involving

commerce to settle by arbitration a controversy thereafter arising out of such contract" and is therefore "valid, irrevocable, and enforceable" under the FAA. 9 U.S.C. § 2. The School Board directly violated this provision by suing the Domestic Insurers in Louisiana for breach of contract and breach of the duty of good faith and fair dealing, ROA.23-30183.23-34, matters plainly covered by the Policy's arbitration provision.

To vindicate their rights under the Policy, the Domestic Insurers moved to compel arbitration under 9 U.S.C. § 4 and to stay proceedings pending arbitration under 9 U.S.C. § 3. Because the FAA mandates that the arbitration provision in the Policy is valid and enforceable, the district court was required to grant the Domestic Insurers' motion to compel the arbitration of the School Board's claims against them and to stay proceedings pending arbitration. 9 U.S.C. §§ 2, 3, 4; *see, e.g., Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) ("The FAA . . . places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms" (citations omitted)). The district court therefore erred in denying the Domestic Insurers' motion to compel arbitration and in refusing to stay proceedings.

### B.    Louisiana Revised Statutes § 22:868 does not "reverse-preempt" the FAA under the McCarran-Ferguson Act.

The McCarran-Ferguson Act, 15 U.S.C. § 1012, can sometimes exempt state laws regulating insurance from FAA preemption. Specifically, the McCarran-Ferguson Act "precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (alteration in original) (quoting 15 U.S.C. § 12).

Any argument that Louisiana law precludes the FAA through the McCarran-Ferguson Act and La. Rev. Stat. § 22:868 is wrong. As relevant here, La. Rev. Stat. § 22:868 limits the use of some kinds of provisions in insurance contracts, but then broadly exempts surplus lines policies:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . .
>
> > (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
>
> . . . .

49

> D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

Although the arbitration provision in the Policy "[d]epriv[es] the courts of [Louisiana] of the jurisdiction or venue" of the suit against the Domestic Insurers, *id.* § 22:868(A), the carveout in § 22:868(D) renders subsection A's bar of arbitration clauses inapplicable in this case.

### 1.   The Policy's arbitration provision is a "forum or venue selection clause."

*First*, the arbitration provision in the Policy is a "forum or venue selection clause." As the Supreme Court has repeatedly explained, "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *Scherk*, 417 U.S. at 519 (; *see E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002) ("[A]rbitration agreements that are enforceable pursuant to the FAA . . . only determine[] the choice of forum."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 483 (1989) (stating that arbitration agreements "advance the objective of allowing buyers of securities a broader right to select the forum for resolving disputes, whether it be judicial or otherwise"); *Mitsubishi Motors*, 473 U.S. at 631 (describing an arbitration provision as a "choice-of-forum provision[]").

This Court, moreover, has heeded the Supreme Court's guidance: "The Supreme Court has emphasized that arbitration agreements are forum-selection provisions." *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 720 n.21 (5th Cir. 2009); *see Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901 (5th Cir. 2005) ("An arbitration clause is a subset of a forum selection clause."); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1205 (5th Cir. 1991) (arbitration provision is a "forum selection clause").

Louisiana law likewise recognizes that an arbitration provision is a type of forum-selection clause. The Louisiana Supreme Court has expressly stated, "An arbitration clause has been characterized by this court as a type of venue selection clause." *Donelon v. Shilling*, 340 So. 3d 786, 790 n.6 (La. 2020). It has also stated that a "mandatory-arbitration clause" is a type of "forum-selection clause." *Hodges v. Reasonover*, 103 So. 3d 1069, 1076 (La. 2012) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 443 (5th Cir. 2008)). And in *Stadtlander v. Ryan's Family Steakhouses, Inc.*, 794 So. 2d 881, 890 (La. Ct. App. 2001), the court of appeals held that "[a]n arbitration agreement is a "kind of forum-selection clause." *Id.* at 890 (quoting *Scherk*, 417 U.S.

at 519)).

Similarly, Louisiana Revised Statutes §§ 9:2778 and 9:2779—statutes dealing with public policy as to public contracts and construction contracts, respectively—also describe an arbitration clause as a type of forum selection clause. Sections 9:2778 and 9:2779 provide that because public contracts "requiring disputes arising thereunder to be resolved in a forum outside of [Louisiana] . . . are inequitable," any provision in a public contract that "[r]equires a suit *or arbitration proceeding* to be brought in a forum or jurisdiction outside of [Louisiana]" is void. *Id.* §§ 9:2778(A), (B)(1) and 9:2779(A), (B)(1) (emphasis added). Louisiana Revised Statutes §§ 38:2196 and 48:251.8 are to similar effect.

### 2. The Policy is not subject to approval by the Louisiana Department of Insurance.

*Second*, the Policy is for surplus lines insurance, a policy form that is indisputably "not subject to approval by [Louisiana] the Department of Insurance." § 22:868(D). Thus, under the plain language of § 22:868(D), the arbitration provision in the Policy is a "forum or venue clause selection in a policy form that is not subject to approval by the Department of Insurance," making it so § 22:868(A)'s prohibition of insurance contracts depriving Louisiana courts of jurisdiction or venue is

inapplicable to the Policy. And because § 22:868(A) does not apply to the Policy, application of the FAA's provisions mandating arbitration would not "invalidate, impair, or supersede" § 22:868, and the McCarran-Ferguson Act is inapplicable. 15 U.S.C. § 1012.

### C.   Arguments that an arbitration provision is not a "forum or venue selection clause" for purposes of § 22:868 misunderstand Louisiana law.

Despite the repeated statements of the Supreme Court, this Court, and Louisiana courts that an arbitration provision is a forum selection clause, *see, e.g.*, *Scherk*, 417 U.S. at 519; *Safety Nat'l*, 587 F.3d at 720 n.21; *Hodges*, 103 So. 3d at 1076, the Domestic Insurers expect the School Board to argue to this Court, as the district court in this case has held previously in a separate case, that § 22:868(D) does not permit arbitration clauses in surplus lines policies. *See Bufkin*, 2023 WL 2393700, at *5-7. But this analysis mistakenly trades an application of § 22:868(D)'s plain language and principles of Louisiana contract and insurance law for an unsupported interpretation of legislative intent.

The district court in *Bufkin* began by noting that § 22:868 was amended in 2020. Before that, § 22:868(A)(2) did not include a reference to "venue" and instead stated, "No insurance contract delivered . . . in

[Louisiana] . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction of action against the insurer." *Bufkin*, 2023 WL 2393700, at *5. The old version of § 22:868 also did not include the carveout that is contained in subsection D of the current version of the statute. *Bufkin*, 2023 WL 2393700, at *5. The district court also noted that in 2019, the Louisiana Supreme Court in *Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.*, 282 So. 3d 1042 (La. 2019), had interpreted the old version of § 22:868 and concluded that that version of the statute did not bar forum selection clauses in insurance contracts because forum selection clauses do not deprive Louisiana courts of the "jurisdiction of the action." *Bufkin*, 2023 WL 2393700, at *6 (citing *Creekstone Juban*, 282 So. 3d at 1047). From this, the *Bufkin* district court speculated that the Louisiana Legislature's amendment the next year to add "venue" to § 22:868(A)(2) and to add the carveout in subsection (D) must been intended to negate the ruling in *Creekstone Juban* and include only forum selection clauses (and not arbitration clauses) in the carveout. *Bufkin*, 2023 WL 2393700, at *7.

But this interpretation—which is not supported by any holding of a Louisiana court or of this Court—contravenes several principles of

Louisiana law. First, under Louisiana law, "[t]he starting point for interpretation of any statute is the language of the statute itself." *Pierce Founds., Inc. v. Jaroy Constr., Inc.*, 190 So. 3d 298, 303 (La. 2016). "The words of a law must be given their generally prevailing meaning," and "[w]ords of art and technical terms must be given their technical meaning when the law involves a technical matter." La. Civ. Code art. 11.

Under these principles of construction, § 22:868(D)'s exemption for a "forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance" includes arbitration provisions. To begin, Louisiana courts have *expressly stated* that an arbitration provision is a type of forum selection clause. *See Donelon*, 340 So. 3d at 790 n.6; *Hodges*, 103 So. 3d at 1076; *Stadtlander*, 794 So. 2d at 890. Because the words "forum selection clause" constitute "[w]ords of art" that have a "technical" legal meaning espoused by the courts of Louisiana, they must be given that meaning in § 22:868 and include arbitration provisions. La. Civ. Code art. 11. This principle of Louisiana law, moreover, is in lockstep with generally applicable canons of statutory construction: "A statute that uses a common-law term, without defining it, adopts its common-law meaning," and "[i]f a statute uses

words or phrases that have already received authoritative construction by the jurisdiction's court of last resort, . . . they are to be understood according to that construction." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 320, 322 (2012).

Consideration of other Louisiana statutes also shows that § 22:868(D)'s reference to a "forum . . . selection clause" includes an arbitration provision. In construing legislation, "it is presumed that the intention of the legislative branch is to achieve a consistent body of law." *MAW Enters., L.L.C. v. City of Marksville*, 149 So. 3d 210, 218 (La. 2014). Thus, to determine the "meaning and intent of a law," one considers "the law in its entirety and all other laws on the same subject matter and plac[es] a construction on the provision in question that is consistent with the express terms of the law." *Allen v. Allen*, 145 So. 3d 341, 346 (La. 2014); *see also Detillier v. Kenner Reg'l Med. Ctr.*, 877 So. 2d 100, 103 (La. 2004) (citing La. Civ. Code art. 13); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (Scalia, J.) ("Statutory construction . . . is a holistic endeavor."). Because Louisiana Revised Statutes §§ 9:2778, 9:2779, 38:2196, and 48:251.8 all describe an arbitration clause as a type of forum selection clause, it is presumed that

the Louisiana Legislature's reference to a "forum . . . selection clause" in § 22:868 includes arbitration provisions. *MAW Enters.*, 149 So. 3d at 218.

Likewise, § 22:868(D) should be construed in light of the Louisiana Binding Arbitration Law's ("LBAL") "strong legislative policy favoring arbitration." *Duhon v. Activelaf, LLC*, --- So. 3d ----, No. 2016-CC-0818, 2016 WL 6123820, at *3 (La. Oct. 19, 2016). The LBAL, moreover, "is virtually identical to the FAA, and determinations regarding the viability and scope of arbitration clauses are the same under either law, thus federal jurisprudence interpreting the FAA may be considered in construing the LBAL." *Id.* The numerous federal cases emphasizing that an arbitration clause is a type of forum selection clause therefore also help show that § 22:868(D) exempts arbitration clauses. *See, e.g.*, *Scherk*, 417 U.S. at 519; *Safety Nat'l*, 587 F.3d at 720 n.21.

To be sure, "jurisdiction and venue are distinct legal concepts." *Creekstone Juban*, 282 So. 3d at 1047.[9] That does not mean, however, that the term "forum selection clause" cannot cover both concepts.

---

[9]   Article 1 of the Louisiana Code of Civil Procedure defines "jurisdiction" as "the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." Venue, on the other hand, "means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject." La. Code. Civ. Proc. art. 41.

Indeed, the *Creekstone Juban* court viewed an arbitration clause—which it saw as going to a court's jurisdiction—as a type of forum selection clause: "[I]t is apparent that the plain language of La. R.S. 22:868(A)(2) does not prohibit the forum selection clause *at issue in this case*, as it chooses New York as the *venue* for the dispute, and does not deprive Louisiana courts of *jurisdiction*." *Creekstone Juban*, 282 So. 3d at 1047 (emphases added). In other words, all arbitration clauses are forum selection clauses, but not all forum selection clauses are arbitration clauses; some forum selection clauses deal with venue only. *See id.* The Supreme Court also explicitly acknowledged this classification in *Scherk*: "An agreement to arbitrate before a specified tribunal is, in effect, a specialized *kind of* forum-selection clause." 417 U.S. at 519 (emphasis added).

One final canon of construction drives home the point that "forum . . . selection clause" in § 22:868(D) includes arbitration provisions: "Every word in a statute must be given meaning, if possible; no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately found which will give force to and preserve every word of the statute." *Breaux v. Lafourche Par.*

58

*Council*, 851 So. 2d 1173, 1177 (La. Ct. App. 2003) (quotation omitted); *see La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 241 (5th Cir. 1988) (interpreting Louisiana law). Section 22:868(A)(2) provides that an insurance contract shall not contain a provision "[d]epriving the courts of this state of the jurisdiction or venue of action against the insurer."

Therefore, because § 22:868 does not apply to the Policy, application of the FAA's provisions mandating arbitration would not "invalidate, impair, or supersede" § 22:868, and the McCarran-Ferguson Act is inapplicable. 15 U.S.C. § 1012. The FAA applies with full force, and the district court erred in not granting the Domestic Insurers' motion to compel arbitration and to stay the proceedings pending arbitration.

## CONCLUSION

This Court should vacate the district court's discovery order and remand the case with instructions for the district court to grant the Domestic Insurers' motion to compel arbitration and stay the proceedings pending arbitration.

Respectfully submitted,

*/s/Thomas C. Wright*
Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Fax)
wright@wrightclosebarger.com
melkonian@wrightclosebarger.com
boettcher@wrightclosebarger.com
francois@wrightclosebarger.com

**Attorneys for Defendants—
Appellants**

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2023, I electronically transmitted the attached Brief of Appellants to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Thomas C. Wright*
Thomas C. Wright

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 11,756 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font for text and Century Schoolbook 12-point font for footnotes.

*/s/ Thomas C. Wright*
Thomas C. Wright